## (July 15, 1969)

In the Matter of SANDRA J. KLUG, Also Known as JOY KLUG, a Child under the Age of Eighteen Years, Alleged to be a Permanently Neglected Child. JEWISH CHILD CARE ASSOCIATION OF NEW YORK, Appellant; ESTELLE KLUG, Also Known as ESTELLE MARASTI, Respondent.— Order of the Family Court, entered January 2, 1969, dismissing the petition, reversed on the law and the facts, without costs or disbursements, and the matter remanded for further proceedings consistent with this memorandum. In this proceeding under article 6 of the Family Court Act, for permanent termination of parental custody of a child and to award custody to the petitioner agency, the Family Court, after a hearing, found that petitioner had not demonstrated "by a fair preponderance of the evidence" that it had "made diligent efforts to encourage and strengthen the parental relationship" as required by sections 614 and 622 of the Family Court Act. The chief support in the record for that finding is evidence of efforts by the petitioner to help the mother surrender the child for the sake of the child and the mother. Under the unusual circumstances of this case, that proof, alone, does not dictate a finding that the agency failed to meet the obligations imposed by the statute. The agency's records in evidence support the conclusion that the agency did comply with the requirements of subdivision (c) of section 614. It was, therefore, error for the Family Court to assign such decisive weight to that factor and to consider itself thereby restricted by the statute under which the court could terminate parental rights. At the new hearing further proof of this critical issue should be adduced. The court should also permit the petitioner to submit proof in support of its allegation (required by § 614, subd. [d]) that the parent has failed for a period of more than one year *substantially* and *continuously* to maintain contact with and plan for the future of the child although physically and financially able to do so. The court made no finding upon this allegation. The mother's present financial and physical ability to care for her child should be inquired into, as well as her ability or lack of ability to substantially plan for the future of the child. Whether the requirements of article 6, part I, of the Family Court Act have been complied with should

be determined under the particular facts and the totality of circumstances of each case rather than on the limited construction adopted by the Trial Judge herein. We therefore remand for further proceedings consonant with the foregoing. Capozzoli, J. P., and Nunez, J., concur; Tilzer, J., concurs in a concurring memorandum; McGivern and McNally, JJ., dissent in a dissenting memorandum by McNally, J. Tilzer, J. (concurring). I agree that the trial court's reading of the statute is too restrictive. With knowledge that the purpose of the statute was to enlarge the definition of neglect so as to provide a solution for the many thousands of children placed in institutions and forgotten by their parents, I would conclude that the placement agency might travel two paths at the same time. So that a parent would not be deprived of her right to be a parent solely because she lacked assistance in being rehabilitated, the statute (§ 614, subd. [c]) required that the agency make efforts to strengthen the parental relationship. Nevertheless, the agency, while pursuing its efforts to encourage the parental relationship, for the true good of the mother as well as the child, had to assess its progress in the mother's rehabilitation, look to the future and travel that other road of the long-term custody of the child. In the event its efforts failed, the child would not be an agency boarder for a period of years but could then be absorbed as a member of a family in the foster home where she had been placed at an early age. Thus, I disagree with the court below that for the agency to seek to strengthen the parental relationship between this mother and child would have violated its "responsibility for the welfare of the child in its custody." In weighing the petitioner's proof, the language of subdivision (d) of section 614 should be interpreted with a realization of the aim of the statute to terminate parental rights in the case of a "permanently neglected child." A child is permanently neglected when her mother (in this case) has failed for more than one year to "substantially * * * maintain contact with and plan for the future of the child although physically and financially able to do so" (§ 614, subd. [d]). "Substantially," means more than occasional visits, a birthday card or a doll at Christmas. "Contact" must be interpreted to mean a meaningful contact where a parent has exercised her parental obligation and has provided love, affection and guidance. "Plan for the future" requires that the parent recognize the temporary nature of her child's placement with the agency, that she express her intention or at least her hope to provide a home for her daughter where she will receive a mother's love, and, further, that she has performed some minimal act toward the fulfillment of that undertaking. The words "although physically and financially able to do so" also require an interpretation in the light of their use in the statute. Physical inability might arise from incarceration of a parent or it might result from hospitalization due to injury or the presence of mental or physical ailments which prevent a mother from exercising her parental obligation. So far as financial ability to care for a child is concerned, the court is well aware of the fact that in this city a mother may obtain support to maintain herself and her child. We realize fully the gravity of the burden placed upon a Trial Justice who must determine whether a partner shall be permanently deprived of the custody of her child. While the rights of parents must be jealously guarded, it should not be forgotten that the purpose of the present statute was to provide a solution to the problem where a parent has failed to act as a parent but has nevertheless refused her consent to adoption. The emphasis of the statute was not on the rights of natural parents, but on the plight of thousands of forsaken children whose parents had abandoned their responsibilities of care and support. A parent who has failed in her obligation to

maintain, care for, protect and plan for the future well-being of her child, has forfeited her parental rights. The welfare of the child is still the primary and paramount concern of the court. McNally, J. (dissenting). I vote to affirm the order, dated January 2, 1969, dismissing the petition. The proceeding is one under article 6, part I, of the Family Court Act, to permanently terminate the custody of respondent as to her child, a female, Joy, born May 22, 1964 out of wedlock. Sections 611, 614 and 622, all part of article 6, part I, govern the procedure. Section 611 defines a permanently neglected child as one placed in the care of an authorized agency and whose parent has failed for a period of more than one year following the placement to maintain contact with and plan for the future of the child although physically and financially able to do so. Section 614 requires the petition to terminate permanently the custody to allege that the authorized agency has made diligent efforts to encourage and strengthen the parental relationship and that the parent, notwithstanding the agency's efforts, has failed for a period of more than one year to maintain contact with and plan for the future of the child although physically and financially able to do so. Section 622 requires proof of the petition to permanently terminate custody to be supported by a fair preponderance of the evidence. Article 6 places an obligation on authorized agencies having custody of children to work with parents towards strengthening their ability and sense of responsibility for reestablishing homes for children in placement. Further, when such efforts have failed for a period of over a year, the statute gives authority to the authorized agency to petition for permanent termination of parental rights, thus freeing a child for adoptive placement. At the fact-finding hearing, counsel for petitioner, counsel for the Department of Social Services, and counsel for the mother stipulated that the child had been in placement on a voluntary commitment since she was seven days old; that the mother had provided no home and no support during a four-year period, the mother, however, has visited the child from time to time. Counsel for petitioner called as its first witness a supervisor of the authorized agency in whose care the child had been, and offered the record kept in the regular course of business. The evidence affirmatively establishes that respondent has not failed to maintain contact with the child and that respondent is not physically and financially able to maintain contact and plan for the future of the child. Even though it might well be that the best interests of the child indicate permanent termination of parental rights, it affirmatively appearing that the mother has continued to visit the child and has rejected the idea of surrender, the evidence adduced does not warrant a finding that the statutory requirements have been met. The mother continues to speak of making a home in the future, and while there is no evidence to sustain this hope, the restrictive nature of the statute compels the conclusion that petitioner has failed to sustain the burden of proof as required by the statute. This proceeding is wholly statutory. The issue is whether the relation of parent and child shall be legally terminated. It does not involve the integrity of the placement of the child with petitioner. It is not enough to establish that the best interests of the child may be furthered by the permanent termination of respondent's legal custody of the child. The statute in addition requires affirmative proof that there has been no contact with the child and no planning for the future of the child despite the physical and financial capacity of respondent towards that end. On this record, there is no statutory authority or jurisdiction permanently to terminate respondent's custody of the child. The allegations of the petition have not been established and the order below dismissing the petition was correct.