J. George Follett, J.
This is a proceeding for permanent termination of parental rights. The case concerns a child born February 13, 1972. The mother was just past 16 years of age when the child was born. The child was placed in foster care by order of this court in a neglect proceeding when the child was less than six weeks old. He has now lived in the same foster home for over two and a-half years. The mother had not *72 been married at the time of birth, and paternity has never been established.
Following placement, the mother continued an involvement with a young man whom she married in the fall of 1972. Thereafter, the young couple moved repeatedly, not staying in one place more than a few months. Her husband has been almost continuously unemployed. For the most part, they have been financially dependent upon their semi-monthly public assistance checks.
With transportation arranged for and provided by the agency, the mother visited sporadically at first, then on a fairly regular basis. However, the testimony reveals that there was minimal interaction between the mother and the child on the occasion of these visits. Furthermore, the child became totally integrated into the foster family and has not developed any meaningful ties with his natural mother. During the two and a-half years the child has been in placement, the stepfather has seen the child on only one occasion.
The petitioner requests permanent termination of parental rights pursuant to article 6 of the Family Court Act. The petitioner alleges compliance with sections 611 and 614 of the act in that it has made diligent efforts to encourage and strengthen the parental relationship; and, in the alternative, that diligent efforts would be detrimental to the moral and temporal welfare of the child.
The diligent efforts requirement imposed by the statute must be gauged on a case by case basis.[1] Efforts at rehabilitation should be designed to remedy the particular deficiencies in parental capabilities which are found to exist in any given case. Efforts should be carried out according to a plan for achieving realistic short-term and long-term goals. Diagnostic workups of the adults and the child should be obtained when necessary to aid in the development of the plan. Planning for the return of the child should begin when the child is placed in foster care. Therefore, of necessity, the planning should involve both the foster parents and the natural parent as well as the child if of sufficient age. Their combined input in and acceptance of the plan is essential to its success.
Any plan will undoubtedly require modification and updating from time to time as goals are achieved or not attained, or as circumstances change. Also, goals may prove impractical or *73 unrealistic thereby requiring development of alternative goals. Any updating and modification of the plan must also involve the parent and foster parent as well as the child when appropriate.
It may be proper in a given case for the agency to shift responsibility for achievement of planned goals to the natural parent with little or no outside help or interference from the agency caseworker. Where this is done, the natural parent should have a clear understanding of the goals which they must attain as well as accept the timetable agreed upon for their attainment.
However, in other cases, considerable encouragement and supportive assistance from the caseworker and other service agencies using appropriate caseworker techniques may be required to encourage and strengthen the parental relationship. Thus in most instances an open, friendly and co-operative relationship should exist between the caseworker, the parent and foster parent characterized by sufficiently frequent visits to assist and be assured that goals are being achieved.
Applying these principles to the case at hand, it is clear that the agency has failed to make the diligent efforts contemplated by the statute. No meaningful plan of encouraging and strengthening the parental relationship was developed at the time the child was taken into foster care. There was no apparent effort made to involve the foster parents and the natural mother let alone the stepfather in the formulation of a plan for strengthening the parental relationship. In fact, the case record discloses that the first meaningful contact between the mother and the caseworker did not occur until nearly six months after the child had been lodged in foster care. The second contact did not occur until more than three months after the first. At that time, the center of discussion was the reported pregnancy of the respondent mother. No supportive services were offered. Instead, a month later the respondent mother was given an ultimatum that she could not visit her child in foster care, the subject of this proceeding, until after she displayed a physician’s statement reporting whether or not she was pregnant.
Admittedly, this young woman, during the period of time that the rehabilitative efforts should have been undertaken, acted irresponsibly and was grossly unco-operative with the caseworkers assigned to her case. However, the evidence indicates that too frequently caseworker contacts resulted in confrontation in which threat and coercion were used to *74 obtain compliance with imposed standards, standards which were largely unrelated to the mother’s lack of stability and her deficiencies in parental skills. The actions of the agency fall far short of the statutory standard of diligent efforts required by the facts of this case.
However, the agency urges that the record justifies a finding that diligent efforts should be excused for the reason that such efforts would be "detrimental to the moral and temporal welfare of the child.”[2] This language of sections 611 and 614 of the Family Court Act was added by chapter 901 of the Laws of 1971. The amendment was recently discussed by this court in the case of Matter of Wood[3] There it was held that the agency should be excused from its diligent efforts obligation where there was no realistic hope of improving the mother’s functioning to the level where she could take adequate care of her children then in foster care.
However, the evidence in this case does not support the same conclusion. The mother, although from a deprived background, will undoubtedly mature and might well have benefit-ted substantially from appropriately planned casework services. Indeed, she has followed the caseworker’s recommendation by maintaining contact with her child. Although she has failed to stabilize her life, it must be remembered that she is still only 19 and, if given sufficient help, may in time become a responsible mother and adult.
Therefore, the issue which now must be answered is: Do the facts of this case, apart from the efforts or lack of efforts of the agency in the past warrant a finding at this time that "efforts would be detrimental to the moral and temporal welfare of the child.” It is necessary to look further into the legislative intent underlying the 1971 amendment in order to determine this issue.
*75 The bill which resulted in chapter 901 of the Laws of 1971 was introduced at the request of the New York State Department of Social Services. The legislative memorandum supporting the bill notes that "There are times, however, when efforts to strengthen the parental relationship will be detrimental to the best interests of the child and result in emotional damage to such a child.”[4] The memorandum then takes note of a Family Court case, Matter of Clear,[5] decided shortly theretofore. The reference to Matter of Clear is significant. In that case Judge Polier determined that the diligent effort requirement had not been met and, in fact, could not be met for the reason that the agency had exerted its influence to encourage surrender for adoption rather than to reunite mother and *76 child. Upon appeal, the Appellate Division by a divided court reversed and remanded with two Judges holding that "It was therefore error for the Family Court to assign such decisive weight to that factor [efforts at surrender] and consider itself thereby restricted by the statute under which the court could terminate parental rights.” One Judge concurring in a separate opinion concluded (p 916) that "A parent who has failed in her obligation to maintain, care for, protect, and plan for the future well-being of her child, has forfeited her parental rights. The welfare of the child is still the primary and paramount concern of the court.” The two remaining Judges dissented and held (p 917) that under the statute, by reason of its "restrictive nature * * * it is not enough to establish that the best interests of the child may be furthered by the permanent termination of the respondent’s legal custody of the child.”
Faced with this dilemma, Judge Polier, on remand in November, 1970 (Matter of Clear, 65 Misc 2d 323), noted that the trial court was relieved from a strict construction of the statute by the Appellate Division majority opinion and found (p 327) "on the preponderance of the evidence, the agency did make efforts to encourage a relationship with the child, limited as it was by a conviction that such efforts would not succeed.”
The amendment here under consideration was adopted at the next session of the State Legislature. It appears that the amendment was intended to resolve the dilemma presented in Matter of Clear by focusing attention upon the welfare of the child as distinct from the claims of competing adults. It constitutes one more step which the Legislature has taken in the direction of assuring that children "will not be left without homes and will, where possible, be given the opportunity to grow up in homes where they will receive good care together with a sense of belonging and being loved that is essential to healthy development.”[6] Furthermore, it is the *77 welfare of the child at the time of the proceeding which must be evaluated, which of necessity does not arise until after the child has been in placement for at least one year.[7]
There are many factors which impact the welfare of a child in a given case. Here the petitioner has called into issue the psychological attachment between the foster parent and the child.[8] It has recently been suggested by eminent authorities that the psychological attachments which children form should be the controlling factor in determining issues of custody of children even in disputes between parent and nonparent. In Beyond the Best Interests of the Child,[9] the authors conclude that breaks in the continuity of child care being offered by a psychological parent are not only harmful but can have devastating consequences.[10]
However, without further legislative changes, the sole fact of a psychological attachment to a foster parent cannot control the determination of whether or not further efforts to encourage and strengthen the parental relationship would be "detrimental to the moral and temporal welfare of the child.”[11] This is not to say that such attachments are to be disregarded. Rather, it is to say that they should be given such weight as is appropriate on a case by case basis along with other relevant factors bearing upon the welfare of the child including the needs of the child as well as the functioning and *78 child care ability of the biological parent.[12]
Considering the factors relevant in this case, it is clear that further efforts to encourage and strengthen the parental relationship between this child and the natural mother would be detrimental to the moral and temporal welfare of the child. Although the mother possesses the promise of being able to adequately care for this and other children, she has not demonstrated by her actions and conduct the ability to stabilize her life at this point in time sufficient to provide the kind of consistent nurture which a young child requires.
Also, even though the mother has visited the child, the evidence shows that there is no meaningful attachment between the natural mother and the child. There is no attachment whatsoever between the stepfather and the child. Also, his background of criminal conduct, unemployment, excessive drinking, and abusive behavior does not at this time recommend him as a father figure for this child. Nor does it appear that the mother now has or in the foreseeable future will acquire the ability to sustain a child through the emotional trauma of a change of placement if the child were returned to *79 her care considering her history of early emotional deprivation as a neglected child herself. Another factor bearing upon the child’s welfare is the fact that the child’s continuity of care apparently can be maintained in the present placement as the present foster parents desire to adopt the child. At this stage in the child’s development the child’s need for continuity of care by a caring adult is a significant factor which should not be overlooked.
It is appreciated that the foregoing analysis of the 1971 amendment and its application to the facts of this case may be viewed as excusing the agency from making a diligent effort to "encourage and strengthen the parental relationship.” Such is not the case. The statute imposes the duty, and the court does not release the agency from its duty. The issue is different at the time the court is called upon to pass upon the question of whether or not diligent efforts would be detrimental to the moral and temporal welfare of the child. At that point in time, the court must look to the facts as they are, not what they might have been if diligent efforts had been made. The welfare of the child is not served if permanent termination is delayed in order to penalize the agency for its failure to make diligent efforts or in order to give the natural parent recompense against the agency in the form of a second chance.
Turning now to section 614 (subd 1, par [d]) of the Family Court Act, I find that even though the mother has maintained contact with her child, she has failed to plan for the future of the child although she has been physically and financially able to do so. In view of the 1973 amendment to section 614, this portion of paragraph (d) is now to be read in the disjunctive.[13] In fact, this young woman and her husband have no present plans whatsoever to take this child back into their care. Their resources have by and large been spent maintaining their nomadic life style without any thought of making realistic plans for the return of the child.
This case is now to be rescheduled for a dispositional hearing. Although many of the factors relevant to the final disposition of this case have been considered in this opinion, a full dispositional investigation is to be presented to the court within 30 days. Furthermore, in view of the findings of this court at this time, the department is to supply to the court as *80 part of the dispositional investigation a complete adoption investigation on the present foster parents of the child.[14]

. Matter of Klug 32 AD2d 915.

. The petition alleges that in the alternative diligent efforts to encourage and strengthen the parental relationship would be detrimental to the moral and temporal welfare of the child for the following reasons:
1. The parents demonstrate a high degree of immaturity and instability in their life style.
2. Their life style reflects economic and social deprivation, and Raymond while in foster care demonstrates the potential of a bright boy.
3. Since Raymond was placed in a foster home at the age of six and one half weeks, there is a strong emotional attachment between the child and the foster family who wishes to adopt him.
4. The psychological parent/child relationship has been satisfied and completed by the foster parents.

. 78 Misc 2d 344.

. The complete text of the memorandum is as follows:
Departmental Bill No. 208, Memorandum, February 18, 1971, New York State Department of Social Services, Proposal No. 10. AN ACT to amend the Family Court Act in relation to the definition of a permanently neglected child.
1 .Purpose of bill: To remove from the definition of a "permanently neglected child” the requirement that an authorized agency having custody of a child make diligent efforts to strengthen the relationship between the child and its parents, but only when it is alleged and proven that such efforts would be detrimental to the moral and temporal welfare of the child.
2. Summary of provisions of bill: Section 611 and subdivision (c) of Section 614 of the Family Court Act would be amended to accomplish the above purpose.
3. Prior legislative history: This bill is identical to the Department Proposal 16 of last year. It was approved for introduction (S-8720) but failed to pass.
4. Justiñcation: Under the present provisions of law authorized agencies having custody of children are required to work with the parents of such children to reestablish the family home and to strengthen the relationship between parent and child. When such efforts do not succeed and the parent, notwithstanding the agency’s efforts, fails for a period of one year or more to contact his child, the agency may petition for a termination of parental rights thus freeing the child for adoptive placement.
There are times, however, when efforts to strengthen the parental relationship will be detrimental to the best interests of the child and result in emotional damage to such child (A recent Family Court case, Matter of Clear, 68 [58] Mise 2d 699, highlights this problem). Nevertheless, an agency must risk damaging such child if it wishes to succeed in a termination proceeding since it cannot establish its petition unless it proves such efforts.
This bill would remedy the problems such cases present by allowing an agency to proceed with termination actions even where no efforts have been made to strengthen the parental relationship, provided however, that the agency can prove that such efforts would be detrimental to the moral and temporal welfare of the particular child involved. The bill would thus safeguard parental rights and also offer the prospect of adoption to a small group of children who would otherwise have to remain in institutional or foster home care.

. 58 Misc 2d 699, reversed and remanded, sub nom., Matter of Klug (32 AD2d 915); rehearing and petition granted, Matter of Clear, (65 Misc 2d 323).

. Matter of Barbara P. (71 Misc 2d 965, 969). As to further steps in the same direction, note the following: chapter 645 of the Laws of 1972 amending section 383 of the Social Services Law authorizing foster parents to intervene in a proceeding to determine custody; chapter 792 of the Laws of 1972 amending section 384 of the Social Services Law authorizing any person as well as foster parents having custody of a child for a stated period to intervene in a proceeding to set aside surrender of the child; chapter 639 of the Laws of 1972 which added subdivision 5 to section 383 of the Social Services Law and section 115-b of the Domestic Relations Law which provide that in proceedings to determine custody of a surrendered child or to revoke or annul *77 the surrender, there shall be no presumption that the best interests of the child would be served by any particular custodial disposition nor would natural parents have any superior claim to the child; chapter 804 of the Laws of 1973 which amended section 392 of the Social Services Law which gives special rights and status to foster parents having the care of a foster child; chapter 863 of the Laws of 1973 which added subdivision 7 to section 384 of the Social Services Law and provides for dispensing of parental consent to adoption where a child has been in care for one year and the parent suffers from a mental illness of such nature as to prevent the return of the child to the parent.

. Section 611 of the Family Court Act.

. See allegations of the petition on this point set forth in footnote 2, supra.

. Published by the Free Press, a division of MacMillan Publishing Co., Inc., 1973.

. The authors summarize the consequences of discontinuity in children’s lives beginning on page 32.

. See People ex rel. Kropp v Shepsky (305 NY 465, 468) where it was said that in evaluating the best interests of the child "the mother or father has a right to the care and custody of a child, superior to that of all others, unless he or she has abandoned that right or has proved unfit to assume the duties and privileges of parenthood.” See also People ex rel. Scarpetta v Spence-Chapin Adoption Serv. (28 NY2d 185); People ex rel. Anonymous v Anonymous (10 NY2d 332); People ex rel. Portnoy v Strasser, (303 NY 539).

. Cf. Matter of Klug (32 AD2d 915); Matter of Holly E. (45 AD2d 893). Factors which would seem pertinent to the issue of whether or not it would be detrimental to the moral and temporal welfare of the child to strengthen the parental relationship are:
1. The present and expected future level of child caring ability of the natural parent. This includes the natural parent’s ability to form emotional (or psychological) ties to the child which are positive, lasting and beneficial. It also includes a consideration of whether or not the natural parent truly wants the care and responsibility of the child.
2. The ability of the natural parent to respond in a time frame consistent with the child’s developmental needs to social services designed to improve his child-caring ability sufficient to care for the child in question. In this regard, consideration should be given to the social services which are needed, the social services which should reasonably be made available and the natural parents’ capacity to utilize these services.
3. The child’s relationship to other persons in his life and the strengths of these relationships as well as their beneficial quality.
4. The needs of the child for specialized care which cannot be offered by the natural parent regardless of social casework.
5. The potential permanency of the present placement either as an adoptive or foster home and the adequacy of that placement to meet the particular needs of the child in question.
6. The impact upon the development and functioning of the child of a movement from a foster home willing to adopt the child to the home of the natural parent.
7. The ability of the natural parent to overcome any functional or emotional harm caused by the removal of the child from the foster home.

. Chapter 870 of the Laws of 1973.

. Compare the dispositional discussion in the second Matter of Clear decision (65 Misc 2d 323, 328).