Kenneth L. Shorter, J.
This is a fact-finding proceeding under article 6 of the Family Court Act. It is brought by an agency to declare the natural mother guilty of neglect with respect to a seven-year-old child originally placed with said agency voluntarily by the maternal grandmother with the natural mother’s knowledge and consent.
The child has resided in the continued custody of the same foster parents for over 24 months to wit, six years to date. Such foster parents now wish to adopt, and have been granted leave to intervene herein pursuant to subdivision 3 of section 383 of the Social Services Law.
Subdivision 1 of section 614 of the Family Court Act as amended provides:
"1. A proceeding permanently to terminate the parent’s or other custodian’s custody of a child on the ground of permanent neglect is originated by a petition, alleging:
"(a) the child is a person under eighteen years of age;
"(b) the child has been placed in the care of an authorized agency, either in an institution or in a foster home;
"(c) The authorized agency has made diligent efforts to encourage and strengthen the parental relationship and specifying the efforts made or that such efforts would be detrimental to the moral and temporal welfare of the child and specifying the reasons therefor;
"(d) the parent or custodian, notwithstanding the agency’s efforts, has failed for a period of more than one year following the placement or commitment of such child in the care of an authorized agency substantially and continuously or repeatedly to maintain contact with or plan for the future of the child although physically and financially able to do so; and
"(e) The moral and temporal interests of the child require that the parents’ or other custodian’s custody of the child be terminated permanently.”
*732 Although the cited statute is much more specific than customary in the setting forth of its criteria, questions of interpretation leap at us immediately:
(A.) Does the agency meet its prima facie obligation when it offers respondent in ultimatum form an intelligent and practical set of alternatives?
(B.) Does the bona fide rejection of agency proposals constitute "planning”?
(C.) Are the agency and parent to be viewed as equals in the planning process?
(D.) Does a proper planning process anticipate shifts of position on both sides where agency proposals have been negatived by parents?
In addition to these problems, inherent in the statute, respondent poses three others: (i.) whether this statute as amended in September, 1973, may use as a test period the years 1968-1972; (ii.) whether petitioner has presented a prima facie case; and (iii.) whether petitioner has sustained its burden of proof.
It has been generally held that the period of neglect needed to trigger the statute need not be the interval immediately preceding the petition or the amended statute. (Matter of B, 60 Misc 2d 662; Matter of Jones, 59 Misc 2d 69.) Before ruling on respondent’s other points, we must first examine questions A, B, C, D above.
An ultimatum from the agency no matter how reasonable standing alone does not meet its statutory obligation of "diligent efforts to encourage and strengthen the parental relationship”. There must also be present not only a bona fide opportunity for counter-proposal, but also affirmative help and guidance by the agency for the parent.
We find that the affirmative case of the agency barely meets this test. The motion to dismiss at the end of petitioner’s case is denied.
As to the respondent, the cases establish that "negative” argument tending merely to veto agency proposals does not constitute planning. Standards of substantiality, constructiveness, and attempted implementation must be met. (Matter of B, 60 Misc 2d 662, supra; Matter of Jones, 59 Misc 2d 69, supra.)
*733 However, the agency and the natural parent cannot be viewed as equals in the planning process. First, almost by definition, the agency operates from a background of professional resources and accumulated experience; this parent from a background of mental stress, financial handicap, and insecurity. Second, the statute in haec verba states the duty of the agency to make "diligent efforts to encourage and strengthen the parental relationship”.
The agency must therefore perform efficiently, diligently, and in good faith. The parent must demonstrate effort, good faith, and minimum adequacy as a planning parent. (Cf. dissent in Matter of Klug, 32 AD2d 915-917.)
In the instant case we miss the normal change of position or the "give and take” to be anticipated in a valid planning proceeding protracted over a period of four years. Our evaluation of the parental performance as "occasionally equivocal and more negative than positive” must be tempered by her regular and affirmative contacts and expression of interest. These factors combined with knowledge of the mental history should have heightened the agency’s awareness of its challenge to diligence. Examination of the agency’s record indicates only routine dealings with the parent.
We find that the agency has not sustained its burden of proof as to diligence. The petition is dismissed.
Having ruled thus we do not reach the vexing question of the abrupt unilateral termination of visitation in January, 1973, in anticipation of an adoption policy formally confirmed in mid-1974. Nor do we rule on the potential conflict between fact finding in this case, and in a prior proceeding yet undetermined under section 392 of the Family Court Act.
Our ruling on the law does not necessarily determine the best interests of this infant. Equitable considerations have been compounded during the unfortunate prolongation of this problem.
Accordingly, this determination is without prejudice to renewed or subsequent proceedings within three months. Custody is continued with Catholic Guardian Society for three months or until the further order of the court in any proper proceeding.