OPINION OF THE COURT
Sheldon M. Rand, J.
In this proceeding for termination of parental rights, petitioner, the Catholic Home Bureau for Dependent Children, filed a petition with this court on January 31, 1983, alleging that Nicole M. has been permanently neglected by her natural mother, Nancy M., pursuant to section 384-b of the Social Services Law. In addition, it is alleged that the child has been abandoned by her putative father, “John Doe”, pursuant to section 384-b (subd 4, par [b]) of the Social Services Law.
A full and plenary hearing was held on June 10,1983, at which respondent mother appeared and was represented by counsel appointed by the court. The respondent father, referred to as “John Doe”, has not been identified. He was served by publication and defaulted in his appearance. The court proceeded against him by inquest. At the hearing, the court heard the testimony of caseworker Adelo Cruz, and of the respondent mother who was called upon to *554 testify as the petitioner’s witness. She chose not to testify on her own behalf.
Nicole M., the child who is the subject of this petition, was born on September 23, 1979. She was voluntarily placed with the Catholic Home Bureau for Dependent Children on November 26, 1980 as a result of respondent mother’s involvement in a drug rehabilitation program. The agency and Ms. M. jointly planned that respondent would obtain public assistance, acquire appropriate housing, and regularly attend a drug rehabilitation program before Nicole could be returned to her. The initial goal was for the return of Nicole by October, 1982. Nicole, however, has been in care continuously since her initial placement in November, 1980. Respondent mother testified as to her participation in PAM, Reality House and Spectrum House, all of which are drug rehabilitation facilities.
The question now before the court is whether the various drug rehabilitation programs that respondent mother attended during Nicole’s placement fall within the statutory definition of “hospitalized” or “institutionalized” as set forth in section 384-b (subd 7, par [d], els [i], [iii]) of the Social Services Law, thereby tolling the running of the statute for permanent neglect. That section states: “The time during which a parent is actually hospitalized, institutionalized, or incarcerated shall not interrupt, but shall not be part of, a period of failure to maintain contact with or to plan for the future of a child.”
This court finds that to be deemed “hospitalized” or “institutionalized” for the purposes of section 384-b (subd 7, par [d]), one must be admitted into an inpatient 24-hour-a-day treatment facility whereby the patient is precluded from freely leaving the establishment. It is only in this situation that the parental obligations to plan and visit the child would be temporarily tolled.
As noted, respondent mother attended PAM, Reality House and Spectrum House in her attempts to become drug free. The court, however, cannot consider respondent’s participation in PAM or Spectrum House since she attended these programs prior to Nicole’s placement in foster care. In November and December of 1980, respondent mother attended Reality House. This facility offers both *555 detoxification and'methadone maintenance programs, but neither involve housing for inpatient treatment. At Reality House, the patient is required to be present at the facility Monday through Friday from 9:00 a.m. to 5:00 p.m., for detoxification, or Monday through Sunday for methadone maintenance. Respondent mother did not testify as to which program she was involved in. However, since neither falls within the statutory definition of hospitalization, this lack of information will not materially affect the court’s decision. Throughout respondent’s two-month involvement with Reality House, her parental obligations continued to exist. During those hours respondent was not attending Reality House, she was still capable of visiting with and planning for her child’s return.
The testimony showed that respondent did not attend any drug programs from January, 1981 through December, 1982. From February, 1982 to August, 1982, respondent received inpatient hospital treatment for a leg injury. This hospitalization does fall within the meaning of section 384-b (subd 7, par [d], cl [iii]) of the Social Services Law and therefore tolls the statute during the afore-mentioned period. Though respondent testified that she detoxed in January, 1983, she did not testify as to the manner in which she accomplished this. Therefore, the court cannot consider it as either “hospitalization” or “institutionalization”.
Consequently, the court finds that there is only one six-month period out of Nicole’s entire two-year stay in foster care that respondent’s parental obligations were temporarily tolled pursuant to law. However, this petition is one for permanent neglect which requires a failure to visit and plan for the child for more than a year’s period. The law states that a child is permanently neglected when the parent has failed for a period of more than one year prior to the filing of the petition, to substantially and continuously maintain contact with and plan for the future of the child, although physically and financially able, to do so. (Matter of Stephen B., 60 Misc 2d 662.) In addition, it is only necessary that the parental failures occur for a continuous period of more than one year at any time during the child’s placement, not just that year immediately prior to the filing of the petition. (Matter of Jones, 59 Misc 2d 69, 71.) *556 Thus, the question now before the court is whether Nicole has been permanently neglected for a continuous period of more than one year at any time since Nicole’s placement.
Since the child’s placement in November, 1980, there has been a total of nine visits by respondent mother. Respondent contacted the agency only minimally during the first year of Nicole’s placement and attempted contact only once between July 1, 1982 and January 31, 1983. Respondent has failed to keep herself regularly enrolled in a drug rehabilitation program (she attended none from January, 1981 to January, 1983). She has failed to obtain both public assistance and adequate housing, and she is still not drug free. In essence, respondent has failed in totality to complete the plan agreed upon by her and the agency. Therefore, since the statute was tolled from February, 1982 to August, 1982, the finding of permanent neglect is based on the period from November 26, 1981 to the end of January, 1982.
With respect to diligent efforts, the facts of this case illustrate that the statutory requirements were satisfied. Section 384-b (subd 7, par [f]) of the Social Services Law defines diligent efforts as reasonable attempts by an authorized agency to assist, develop and encourage a meaningful relationship between the parent and child. It involves both consulting and co-operating with the parents in developing a plan for the return of the child and making suitable arrangements for visitation. When a parent has failed for a period of six months to keep the agency apprised of his or her whereabouts, diligent efforts are not required. (Social Services Law, § 384-b, subd 7, par [e].)
For over a two-year period, the petitioning agency assisted respondent in visiting with and planning for the return of Nicole. Their efforts, however, were inadvertently blocked as a result of respondent’s lack of contact with the agency and the agency’s lack of knowledge as to her whereabouts. The agency emphasized to the respondent the need to be consistent with visitation and to attend counseling with the agency. Appointments were made by the agency with respondent for counseling sessions, yet respondent never attended. The agency arranged for respondent to receive treatment with Odyssey House, a drug *557 rehabilitation facility, yet she failed to keep her appointment.
Since visitation was difficult for respondent at the agency, she was given the address and telephone number of Nicole’s foster parents so that visits could be arranged at the foster home, yet in two years, respondent visited at the foster home only four times. The agency also arranged for numerous visits at the maternal grandmother’s home, since respondent lived there at one time. Again, only five visits successfully took place.
Notably, the agency’s primary obstacle in making diligent efforts was respondent’s failure to apprise them of her whereabouts. From December, 1981 through June, 1982, and from July, 1982 through January, 1983, respondent’s whereabouts were unknown. During these periods, the agency maintained monthly contacts with the maternal grandmother in the hopes of locating respondent. Therefore, under the particular circumstances of this case, the agency’s efforts were sufficient to satisfy their statutory requirements to make diligent efforts. (Matter of Raymond “M”, 81 Misc 2d 70; Matter of Lisa Ann U., 75 AD2d 944; Matter of Karas, 59 AD2d 1022.)
Accordingly, for all the above-stated reasons the petition is granted on fact finding. This court finds by clear and convincing evidence that Nicole M. has been permanently neglected by respondent mother, Nancy M., and abandoned by respondent father, “John Doe”.
This proceeding is to be recalendared by the clerk of the court for a dispositional hearing pursuant to section 631 of the Family Court Act on October 3, 1983 in Foster Care Review, Part III.