OPINION OF THE COURT
Raymond E. Cornelius, J.
This proceeding, which requests that guardianship of the child, James S., be awarded to the petitioner, raises, among other issues, the question of mental illness.
The child subject of this proceeding was born on September *652 18, 1968, and has continuously resided in the care and custody of the petitioner since June 17, 1969. The petition in this case was filed in November of 1977, and alleges that both respondents were unable by reason of mental illness to provide proper and adequate care for the child, pursuant to section 384-b (subd 4, par [c]) of the Social Services Law, and also, that they permanently neglected the child, pursuant to section 384-b (subd 4, par [d]) of the same law.
In connection with the allegation of mental illness, the court appointed a psychiatrist to examine both respondents, in order to comply with the requirements of section 384-b (subd 6, pars [c], [e]) of the Social Services Law.
In regard to the respondent mother, Mary S., the court-appointed psychiatrist testified that she suffered from a mental illness, which was described as a manic depressive illness of a "circular type”. This particular illness is characterized by periods of exacerbation, during which times the respondent would have difficulty in making judgments and could not care for a child. Although there are also periods of remission, the occurrence of these two extreme states cannot be predicted with any degree of certainty in the future. It should also be emphasized that the respondent mother had been hospitalized for this illness for extensive periods of time.
The court accepts the opinion of the court-appointed psychiatrist and, based upon his testimony, together with the other evidence in this case, concludes that the mental illness suffered by the respondent mother is a mental disease or condition "manifested by a disorder or disturbance in behavior, feeling, thinking or judgment to such an extent” that the child would be in danger of becoming a neglected child if returned to her custody. Although the court has sustained the petition, based upon the allegations of mental illness, the facts which support this conclusion dictate a contrary ruling concerning the allegation of permanent neglect.
In order for a child to be declared a permanently neglected child, the parent must have been physically and financially able to maintain contact with or plan for the future of the child. (Social Services Law, § 384-b, subd 7, par [a].) Although the statutory reference is made to physical ability, the court interprets this term to include mental incapacity, or any other mental state which would preclude attainment of these goals. (See concurring memorandum, Matter of Klug, 32 AD2d 915, 916.)
*653 The court is aware that the term "physically” has been interpreted literally to apply to powers of locomotion. (Matter of Stephen B., 60 Misc 2d 662.) However, this case was decided prior to the 1973 amendment, which permitted a finding of permanent neglect based upon failure to "maintain contact with or plan for the future of the child” (emphasis added). In other words, the Legislature amended the law to make the requirements of a failure to maintain contact and the failure to plan for the future of the child in the disjunctive, rather than the conjunctive. The concept of failure to plan for the future necessarily includes the use, or perhaps more accurately the lack of use, of a person’s mental faculties. In this proceeding, for the reasons already stated, the respondent mother, by reason of her mental illness, was unable to plan for the future of her child.
The petitioner requests that the parental rights of the respondent father, Michael S., also be terminated on the basis of mental illness. In support of this allegation, the petitioner has submitted proof which shows that the respondent father suffers from extreme alcohol addiction. Although some authorities make reference to alcohol as a mental illness, the court-appointed psychiatrist in this proceeding, declined to equate the two conditions. He testified that mental illness is generally equated with psychosis.
As previously noted in the case of the respondent mother, the term mental illness, as defined by section 384-b (subd 6, par [a]) of the Social Services Law, involves an affliction with a mental disease or condition manifested by a behavioral feeling, thought or judgment disorder or disturbance, and thus, is analogous to the definition of mental illness as contained in subdivision 20 of section 1.03, of the Mental Hygiene Law. The term alcoholism is not defined in the Social Services Law, but is defined in subdivision 13 of section 1.03 of the Mental Hygiene Law as a "chronic illness in which the ingestion of alcohol usually results in the further compulsive ingestion of alcohol beyond the control of the sick person to a degree which impairs or destroys his capacity to function normally within his social and economic environment and to meet his civic responsibilities.” Therefore, if analogy can be made to the Mental Hygiene Law, both the conditions of mental illness and alcoholism involve an impairment of a person’s thought processes, judgments, and generally, the ability to function within certain settings. However, a distinction is made be *654 tween the underlying cause of the impairment, the condition of alcoholism involving a chronic illness and mental illness as a mental disease or condition. Furthermore, although alcoholism is listed as a mental disability, a distinction is made between alcoholism and mental illness. (Mental Hygiene law, § 1.03, subd 3.)
The court holds that alcoholism does not constitute mental illness for purposes of section 384-b (subd 6, par [a]) of the Social Services Law, and therefore, the petition as to the respondent father, based upon that ground, must be dismissed.
There remains the allegation of permanent neglect as related to the respondent father, Michael S. A resolution of this issue raises the interesting and unique question as to whether or not an adjudication of permanent neglect may be made in an instance where an order of protection has been made by Family Court, precluding visitation.
This question is framed by the usual facts in this proceeding. Generally, the proof submitted by the petitioner at the fact-finding hearing related to a period of time between September 17, 1973 and the verification of the petition on November 1, 1977. The respondent father was continuously hospitalized for alcoholism from October 3, 1974 through November 17, 1976, except for a one-week period between August 15 and August 21, 1975. For several months after November 17, 1976, he resided in a halfway house designed to give assistance to people suffering from alcoholism, but which the court does not consider a hospital.
It is quite apparent from the above-recited facts that the respondent father suffers from severe alcohol addiction, and indeed, the court finds that he has completely failed to plan for the future of his child because of alcoholism. Nevertheless, a parent is not deemed unable to plan for the future of a child by reason of the use of alcohol. (Social Services Law, § 384-b, subd 7, par [d], cl [i].) This rule is modified by the further provision that the time during which a parent is actually hospitalized or institutionalized for alcohol shall not be part of a period of failure to plan for the future of a child, although neither shall such time interrupt that period. (Social Services Law, § 384-b, subd 7, par [d], cl [iii].) Applied to the facts of this proceeding, the respondent father was not hospitalized between November 17, 1976 and November 1, 1977, except for two short admissions in February of 1975, which constituted a total of approximately seven days. However, on September 27, *655 1976, an order was entered extending foster care placement for this same child, in connection with a neglect proceeding, and by the terms thereof, precluded visitation between father and the child. On August 22, 1977, another order was made, in the same neglect proceeding, extending placement and incorporating the same restriction in regard to visitation by the father. In fact, the testimony revealed that caseworkers for the petitioner declined requests for visitation by the father, based upon these orders.
If the allegation of permanent neglect were founded upon a failure to maintain contact for a period in excess of one year, an order precluding visitation between a parent and child might very well constitute a defense. Although visitation, and the establishment of a schedule to maintain contact with the child in foster care, are oftentimes considered an important, if not crucial, factor in a plan for the future, each case must be considered in the light of its own facts. In addition, the term "to plan for the future of the child” has been defined by the Legislature as taking necessary steps to provide "an adequate, stable home and parental care” and the court is specifically authorized to consider the failure of a parent to utilize "medical, psychiatric, psychological and other social and rehabilitiative services and material resources made available”. (Social Services Law, § 384-b, subd 7, par [c].) In a concurring opinion in the Matter of Klug (32 AD2d 915, 916, supra), Justice Tilzer described the concept as a recognition on the part of a parent of the temporary nature of foster care placement and some minimal act performed by the parent to provide a home and love for that child.
In this proceeding, it is apparent that the respondent father could not provide a home or parental care for the child, and therefore, cound not make a realistic plan for the future of the child, unless, as a minimum, he controlled his alcoholism. Also, subsequent to November 17, 1976, except for the brief period in February of 1977 as already noted, the respondent father failed to avail himself of further hospitalization, although available to him.
It may be contended that the period of time between November 17, 1976, and November 1, 1977, together with the fact of seven days hospitalization in February of 1977, fails to meet the statutory requirement of a failure to plan for a period in excess of one year. However, there was some testimony introduced by the petitioner relating to the fact that *656 both respondents were living together in the months of September and October, 1973, and that several visits were made by a caseworker to their home during this period of time. The medical records introduced at the hearing indicate that the respondent father was suffering from a severe drinking problem during this period, as well, and during one visit by the caseworker, the father was observed consuming alcoholic beverages. Thus, the court finds that the requirement of proof of a failure to plan for a period in excess of one year, although interrupted, has been met. In addition, the court finds that any efforts by the petitioner to encourage and strengthen the parental relationship during this period of time would be detrimental to the best interests of the child because of the father’s extreme alcohol addiction. (See Matter of Denlow, 87 Misc 2d 410, 420.)
Pursuant to the above findings, the court sustains the petition as to the respondent father, based upon the allegation of permanent neglect. Accordingly, the petitioner is directed to prepare a report containing recommendations for a disposition, based upon the best interests of the child. This report is to be submitted to counsel and the court at least five days prior to the date to be scheduled for the dispositional hearing.