OPINION OF THE COURT
Jones, J.
In this proceeding to terminate parental rights the evidence in the record is not sufficient to support the finding by the Appellate Division that the mother, by reason of mental illness, is presently and for the foreseeable future unable to provide proper care for her child. Its order granting the petition on that ground must therefore be reversed and the matter remitted to that court to determine whether there was sufficient evidence of permanent neglect by the mother to support a termination of her parental rights for that reason — a question not passed on by the Appellate Division.
Approximately three weeks after her birth on March 10, 1975, Hime, the child who is the subject of this appeal, was placed with foster parents under the auspices of petitioner Jewish Child Care Association by the Commissioner of Social Services to whom the child had been remanded on a *246 petition alleging neglect. During the course of various steps in the proceeding initiated by that petition Hime remained with her foster parents, and on July 22,1976 a petition was filed by the agency seeking termination of parental rights[1] and requesting that guardianship be awarded to it with authority to consent to the child’s adoption. The petition sought relief both on the basis that the mother (appellant in our court) by reason of mental illness was unable then and for the foreseeable future to provide proper care for Hime and, alternatively, by reason of her permanent neglect in that she had failed for more than one year substantially and continuously or repeatedly to plan for the future of the child notwithstanding the agency’s diligent efforts to encourage and strengthen the parental relationship.
Following a fact-finding hearing on this petition (at the institution of which the prior neglect petition was dismissed) and a subsequent dispositional hearing Family Court concluded that neither of the bases for the relief requested had been established and dismissed the petition, awarding custody of Hime to the foster parents with liberal visitation rights to the mother. On cross appeals the Appellate Division unanimously modified the disposition by Family Court by granting the petition for termination of parental rights on the ground of the mother’s mental illness and remanding the matter to Family Court where, in execution of the Appellate Division’s mandate, an order was entered terminating the mother’s parental rights, awarding custody to the agency and the Commissioner of Social Services, and authorizing either to consent to a suitable adoption of Hime. Concluding that “Since the mother has been found ‘mentally ill’, it necessarily follows that she was not ‘physically able’ to plan for the future of the child (SSL § 384-b subd. 7 [a]) ”, the Appellate Division added, “Hence, the cause of action based upon ‘permanent neglect’ must be dismissed as academic.”
The mother now challenges the permanent termination of her parental relationship with her daughter by reason *247 of her mental illness under section 384-b (subd 4, par [c]) of the Social Services Law. Because her challenge is well taken, the order of the Appellate Division must be reversed and the matter remitted to it for further consideration of the other branch of the initiating petition.
Section 384-b of the Social Services Law provides a procedure by which, for very serious reasons, parental relationships may be severed, the guardianship of a child may be committed to an authorized agency or foster parent, and adoption of the child may proceed without the consent of the natural parent. Among the grounds specified for such an order in subdivision 4 are: “(c) The parent or parents, whose consent to the adoption of the child would otherwise be required in accordance with section one hundred eleven of the domestic relations law, are presently and for the foreseeable future unable, by reason of mental illness * * * to provide proper and adequate care for a child who has been in the care of an authorized agency for the period of one year immediately prior to the initiation of the proceeding under this section; or (d) The child is a permanently neglected child.” Both of these grounds were tendered by the agency in this proceeding as predicates for the desired order ending appellant mother’s relationship with Hime.
We turn first to the ground of mental illness, on which the Appellate Division founded its disposition. In addition to defining what is mental illness for the purpose of the section,[2] the statute also prescribes certain procedural requirements to assist the court in determining whether the defined condition exists. Thus, paragraph (g) of subdivision 3 provides that any finding of mental illness must be based upon clear and convincing proof. Paragraph (e) of subdivision 6 mandates that, in the case of a parent alleged to be mentally ill, the Judge shall order the parent to be examined by a court-appointed psychiatrist and shall take the testimony of such psychiatrist, and paragraph (c) of the *248 same subdivision prohibits a determination of the legal sufficiency of the proof until such testimony has been taken by the Judge., Notably, the language of the two paragraphs of subdivision 6 is not specific with respect to the scope of the psychiatric testimony which must be received — i.e., whether the expert’s testimony is sufficient if directed only to the existence of the condition (mental illness) or whether it must also address the consequence of the condition (inability at the time of the hearing and for the foreseeable future to provide proper and adequate care for the child). It may be argued that whether the mental illness is such as to render the mother unable presently and for the foreseeable future to care for her child is a proper subject for expert testimony. In any event an expression of opinion with respect thereto by the court-appointed, examining psychiatrist would augment the evidence on which the court ultimately must reach its conclusion whether the issuance of an order pursuant to section 384-b is warranted.
In the present case the Family Court had before it not only testimony of the court-designated psychiatrist, Dr. Kessel, but also that of the agency caseworker who had regularly been present on the monthly occasions when the mother visited with Hime and who described for the court the behavior of the mother at the time of the visits, as well as extensive psychiatric hospital records and evaluations performed by the Family Court Mental Health Service, virtually all of which were supportive of a conclusion that the mother had been and at the present time was unable, by reason of mental illness, to provide proper care for Hime. Thus, there can be no doubt as to the sufficiency of the evidence to support the Appellate Division’s finding of present inability of the natural mother by reason of mental illness to care for her child.
With respect to the prospect “for the foreseeable future”, however, the same is not so. In fact, quite the contrary might be said. When asked by the court to express an opinion as to the mother’s capacity to care for her child, Dr. Kessel repeatedly spoke only of present inability. He stated variously, “I do feel your Honor that it was entirely possible that since she has shown improvement over the previous psy *249 chiatric evaluations that at a future date she might be able to take care of the children”,[3] “I mean given the factors that I have had to take into consideration on the possibilities you mentioned of ongoing treatment and true involvement in that and on medication I think it is a good possibility she could care for the child”, “I think that remaining in remission and given therapeutic support that she might very well be able to rear the child”.
In sharp contrast, no professional opinion was offered that the mother would be unable for the foreseeable future properly to care for Hime. Any conclusion that that is the case would have to be predicated on inferences as to the mother’s future mental condition and inability drawn from her past and present condition and behavior. While it may be that the evidence in some cases of past and present condition would be of such character and sufficient probative worth to warrant an inference as to future inability even in the absence of professional opinion evidence as to future incapacity of the parent, such inferences alone cannot serve as the clear and convincing proof required for termination of the parental relationship in the present case in face of the considered opinion expressed by the court-appointed psychiatrist that the mother might well be able at some future, though now undeterminable, time through therapy and medication properly to care for Hime. Accordingly, the finding of the Appellate Division with respect to the mother’s future inability to care for her child must be vacated.
We turn then to the second aspect of this case — the attempt by the agency to obtain termination of the mother’s rights by reason of her alleged permanent neglect of the child. Family Court rejected this effort, concluding that the proof had not been sufficient to establish permanent neglect justifying the relief sought. The Appellate Division, treating examination of the mother’s conduct with respect to performance of the duty to “plan for the future of the child” within the definition of a “permanently neglected *250 child” (Social Services Law, § 384-b, subd 7, par [a])[4] as an academic exercise because it concluded that by reason of her mental illness the mother was not “physically” able to plan (and thus was excused from planning), did not reach this issue.
In this case there was no claim that Hime was a permanently neglected child under section 384-b (subd 7, par [a]) by reason of a failure by her mother to maintain contact with her. There was ample evidence of regular visits with the child over the extended period when she was in foster care. It was the agency’s position however that the mother had failed to “plan for the future of the child, although physically and financially able to do so”, and that such failure constituted a basis for a finding of permanent neglect (Matter of Orlando F., 40 NY2d 103, 110). The Appellate Division should now consider whether the evidence of record was sufficient to sustain that contention. Nothing in the statutory definition of a permanently neglected child refers to “mental illness” of the parent; the only stated qualifications for the requirement of planning for the child’s future are that the parent be “physically and financially” able to do so. We do not read the language as encompassing mental condition or status, nor do we, as did the Appellate Division, equate mental and physical capacity. (Contra Matter of James S., 98 Misc 2d 650.) Indeed, it *251 may be contended that most natural mothers who fail to plan for their own children are subject to some form of mental disturbance; if mental inadequacy were to be considered an acceptable excuse for failure to plan the scope of the statutory provision would be narrowed to a point of near practical uselessness. Mental illness of a parent as a basis for terminating parental rights is treated specifically and in detail in other subdivisions of section 384-b; if it had been the legislative intention that mental illness was also to serve as an excuse for a failure to plan for the child’s future it could easily have been so provided in paragraph (a) of subdivision 7.[5] That it was not, in face of other provisions treating the condition, leads us to conclude that the statute is to be literally applied, and that mental illness does not, ipso facto, establish physical disability exonerating a parent from the obligation to plan for her child.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to that court for further proceedings in conformity with this opinion.

. Although both the mother’s husband and the person identified by her as Hime’s father were given notice of the proceeding neither appeared nor participated.

. Paragraph (a) of subdivision 6 of section 384-b provides: “For the purposes of this section, ‘mental illness’ means an affliction with a mental disease or mental condition which is manifested by a disorder or disturbance in behavior, feeling, thinking or judgment to such an extent that if such child were placed in or returned to the custody of the parent, the child would be in danger of becoming a neglected child as defined in the family court act.”

. The mother has a second, older child, Suzanne, who is not the subject of the proceeding before us. There has, however, been extensive litigation involving termination of the parental relationship with that child in which the most recent order was an order of the Appellate Division, First Department, granted February 3, 1981, directing termination.

. Section 384-b (subd 7, par [a]) of the Social Services Law provides in part: “For the purposes of this section, ‘permanently neglected child’ shall mean a child who is in the care of an authorized agency and whose parent or custodian has failed for a period of more than one year following the date such child came into the care of an authorized agency substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency’s diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interests of the child.” Paragraph (c) of the same subdivision provides: “As used in paragraph (a) of this subdivision, ‘to plan for the future of the child’ shall mean to take such steps as may be necessary to provide an adequate, stable home and parental care for the child within a period of time which is reasonable under the financial circumstances available to the parent. The plan must be realistic and feasible, and good faith effort shall not, of itself, be determinative. In determining whether a parent has planned for the future of the child, the court may consider the failure of the parent to utilize medical, psychiatric, psychological and other social and rehabilitative services and material resources made available to such parent.”

. It may not be without significance that by explicit provision of the statute, the parent’s use of drugs or alcohol (which might be said at least in some instances to impair the ability to plan for the future of the child) shall not excuse from the obligation to plan “except while the parent is actually hospitalized or institutionalized therefor” (Social Services Law, § 384-b, subd 7, par [d],cl [il).