In the Matter of HIME Y., a Child Alleged to be Permanently Neglected. JEWISH CHILD CARE ASSOCIATION, Appellant; ELAINE S. Y. et al., Respondents.

First Department, June 25, 1981

### APPEARANCES OF COUNSEL

*David H. Berman* of counsel *(Gerald E. Bodell,* attorney), for appellant.

*A. Isadore Eibel* for Elaine S. Y., respondent.

*Janet R. Fink* of counsel *(Charles Schinitsky,* attorney), for the Law Guardian.

### OPINION OF THE COURT

MURPHY, P. J.

This court modified an order of the Family Court, New York County, by granting the petition on the ground that the mother is "mentally ill", by vacating so much thereof as granted the mother liberal visitation privileges, and by remanding the matter for further proceedings. The order of the Family Court was otherwise affirmed. *(Matter of*

*Hime Y.*, 73 AD2d 154.) Thereafter, on February 24, 1981, the Court of Appeals reversed (52 NY2d 242) the order of this court for the reason that there was insufficient proof to support this court's finding that the mother would be unable to provide proper and adequate care for Hime in the foreseeable future because of her mental illness. (Social Services Law, § 384-b, subd 4, par [c].) The Court of Appeals also found that this court incorrectly equated mental illness (Social Services Law, § 384-b, subd 6, par [a]) with physical disability (Social Services Law, § 384-b, subd 7, par [a]). The case was remitted to this court to determine whether petitioner established its other cause of action founded upon the contention that Hime was a "permanently neglected child" (Social Services Law, § 384-b, subd 7, par [a]).

The petitioner was required to prove that Hime was a "permanently neglected child" because the mother had "failed for a period of more than one year following the date such child came into the care of an authorized agency * * * to * * * plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interests of the child." (Social Services Law, § 384-b, subd 7, par [a].) It should be stressed that the petitioner has the burden of establishing this cause upon a fair preponderance of the evidence (Social Services Law, § 384-b, subd 3, par [g]).

During the period after her discharge from Bellevue Hospital (June 26, 1975) and the commencement of this proceeding (August 18, 1976), the record shows that the mother did not take any affirmative measures "to plan for the future of the child" (Social Services Law, § 384-b, subd 7, par [c]). This fact is not surprising since the mother was found, by both this court and the Court of Appeals, to be "mentally ill" during this period. While it is theoretically possible that a "mentally ill" individual will competently plan for the future of a child, that occurrence will, indeed, be the exceptional rather than the usual case.

The record further demonstrates that petitioner's caseworkers did make diligent efforts to encourage and strength-

en the parental relationship. The caseworkers attempted, without any degree of success, to urge the petitioner to provide a stable home, to obtain a viable job, and to seek further therapeutic assistance. For the most part, the caseworkers' attempts were rebuffed by the mother. Moreover, in view of the mother's continuing "mental illness", it was actually unnecessary and ill-advised for petitioner to make any efforts at all to encourage and strengthen the parental relationship. It was not in the best interests of the child to foster any contact with the mother whose bizarre behavior has previously been chronicled by this court (73 AD2d 154, *supra*).

With regard to the requirement that the mother be "physically able" to plan, the Court of Appeals has given this phrase a literal construction. The highest court has directed that this court consider the mother's "physical ability" without reference to her mental condition. During the period embraced by this cause for permanent neglect, the mother had the power to perambulate, the strength to handle the child, and the physical ability to execute a plan. Thus, technically, this court may and will make a finding that the mother was "physically able" for purposes of section 384-b (subd 7, par [a]) of the Social Services Law. However, as a practical matter, the mother could not "physically" effectuate a plan that she could not conceptualize or formulate.

With relation to the requirement that the mother be "financially able", the Court of Appeals again read that phrase as not encompassing an individual's mental condition. As was mentioned upon the prior appeal to this court (73 AD2d 154, 159, *supra*), very little was known of the mother's employment history because she refused to disclose pertinent information in that area. She was unable to hold a steady job since 1974. No support was received from her husband or her paramour. Social Security insurance (SSI) benefits, in an undisclosed amount, were received for her nervous condition.

The petitioner has the burden of proving that the mother was "financially able" to plan for the future of the child. While the petitioner's caseworkers persistently inquired

about the mother's financial standing, she was unwilling to provide any details as to her income or financial resources. For purposes of this statute, an unfavorable inference may thus be drawn with regard to the mother's financial ability. In other words, this court does infer that she did have the financial ability to plan for the child.

Moreover, the petitioner's caseworker, Sheila Davidson, testified that the mother represented that she "would handle" the situation despite her financial difficulties. At a hearing held on September 7, 1977, the mother attested to her own financial resourcefulness:

"I am a professional singer, dancer, actress and model. I have made my living all of my life as a very responsible person. I have supported myself since almost childhood. I know that financially I could raise my children * * *

"I have always maintained my own apartment and paid my own rent and paid the bills for Sitacon and Mr. Chansathit".

It should also be stressed that the mother was receiving SSI benefits. It is fair to assume that the mother was receiving an adequate amount of public assistance to provide for her own needs, and that further assistance would have been forthcoming had the child been turned over to her custody. (Matter of Klug, 32 AD2d 915, 916.)

Finally, it should be emphasized that the Court of Appeals has already agreed with our finding that the mother was unable to care for the child during this time period because of her "mental illness". From the statutory definition of "mental illness" (Social Services Law, § 384-b, subd 6, par [a]), it follows that Hime was in danger of becoming a "neglected child" if she had been returned to the mother. Hime could have only become a "neglected child" (Family Ct Act, § 1012, subd [f], par [i], cl [A]) if, inter alia, the mother was "financially able" to provide various essentials but failed to supply them. The Court of Appeals, in agreeing that the mother was "mentally ill", necessarily agreed that the mother was "financially able" to plan and provide for the child.

For all the foregoing reasons, we find that the mother was "financially able" to plan for the child.

Accordingly, the order of the Family Court, New York County (GARTENSTEIN, J.), entered January 26, 1979, which, *inter alia*, dismissed both causes relating to Hime, should be modified on the law and the facts, by granting the petition on the ground that Hime was a "permanently neglected child", by vacating so much thereof as granted the mother liberal visitation privileges, and by remanding the matter for further proceedings, and, as modified, the order should be affirmed, without costs. Because of the possible dangers arising from the fact that this child has been left in "legal limbo" (52 NY2d 242, 252, *supra*) during these protracted proceedings, we encourage the mother to pursue her appellate remedies expeditiously.

BIRNS, MARKEWICH and BLOOM, JJ., concur.

Upon remittitur from the Court of Appeals, order Family Court, New York County, entered on January 26, 1979, modified on the law and the facts, by granting the petition on the ground that Hime was a "permanently neglected child", by vacating so much thereof as granted the mother liberal visitation privileges, and by remanding the matter for further proceedings, and, as modified, affirmed, without costs and without disbursements.