■ In the Matter of the Guardianship and Custody of DOCHINGOZI B., an Infant. CHILDREN'S AID SOCIETY, Respondent; EARLINE E., Appellant, and ATTORNEY-GENERAL OF THE STATE OF NEW YORK, Intervenor. — Order, Family Court, New York County (Kaplan, J.), entered September 16, 1980, granting petition to terminate parental rights as to respondent mother on the ground of respondent mother's mental illness, is affirmed, without costs. The Family Court found "by clear and convincing evidence that the respondent by reason of mental illness is unable to provide care which is proper and adequate for the child presently and for the foreseeable future." (See Social Services Law, § 384-b, subd 4, par [c].) Both the testimony at the hearing by Dr. Brooks, the court-appointed psychiatrist, and the recommendation in his report (based on "a wealth of evidence") were unequivocal on the point of the mother's present and future inability to care for the child. Although respondent would not consent to the release of the records of her previous psychiatric hospitalizations, Dr. Brooks testified that those records would not have changed his opinion. He based his prognosis on respondent's history — especially living on the streets and teaching the child to steal — and testified: "That sort of behavior does not change, that is, whatever drove the mother to that point of view would still be there." The history of respondent's relations to and treatment of the child and Dr. Brooks' definitive testimony that the respondent would be unable to properly care for the child for the foreseeable future constituted the clear and convincing proof required for termination of parental rights (see *Matter of Hime Y.,* 52 NY2d 242, 249). The unequivocal testimony of Dr. Brooks makes this case very different from *Matter of Hime Y. (supra),* where the court-appointed psychiatrist opined that it was "entirely possible" that the mother would be able to care for the child at some date in the future. Concur — Murphy, P. J., Markewich and Silverman, JJ.

Fein, J., dissents in a memorandum as follows: This is another Family Court proceeding which began as a neglect proceeding (Social Services Law, § 384-b, subd [d]; subd 7, par [a]), and was then converted into a mental illness proceeding (Social Services Law, § 384-b, subd 4, par [c]). I do not agree with

the majority that there was clear and convincing proof that the mother is "for the foreseeable future unable, by reason of mental illness * * * to provide proper and adequate care" (Social Services Law, § 384-b, subd 4, par [c]). In my view the evidence is sufficient for a finding that the child was "permanently neglected" by reason of her parents' failure to plan for the child's future (Social Services Law, § 384-b, subd 4, par [d]; subd 7, par [a]; *Matter of Orlando F.,* 40 NY2d 103; *Matter of Ikem B.,* 73 AD2d 359). There should be a remand for a dispositional hearing, which is required where there has been a finding of permanent neglect. (See *Matter of Lewis,* 41 AD2d 619.) It would serve no useful purpose to recite the evidence set forth in this sparse record. The evidence in this case is largely indistinguishable from the evidence found to be insufficient in *Matter of Hime Y.* (52 NY2d 242; see *Matter of Suzanne N. Y.,* 54 NY2d 824). As in *Hime Y.,* there can be no doubt as to the sufficiency of the evidence to support the finding of present inability of the mother by reason of mental illness to care for the child. However, with respect to the prospect "for the foreseeable future", the evidence is insufficient. Dr. Brooks, the court-appointed psychiatrist who examined the mother for 20 minutes, some 10 months prior to the hearing, conceded that his examination was sharply limited because of the failure of the mother to co-operate or to make available prior records concerning her hospitalization. Dr. Brooks' testimony was largely premised upon his examination of documents and other reports describing the prior hospitalization of the mother and her relationship with the child. Nothing in the record appears to support the doctor's testimony that the mother was "teaching the child to steal". As I observed in concurring in *Matter of Sylvia M.* and *Matter of Nereida S.* (82 AD2d 217, 241-244), and, as noted in *Hime Y. (supra),* the language of the statute is not specific with respect to the scope of the requisite psychiatric testimony upon which to base a conclusion that the parent is unable for the foreseeable future to provide proper and adequate care. Plainly, to the extent that the expert's testimony relates only to the present existence of mental illness, it stands on a firmer footing. Enough has been written in the cases and in the psychiatric literature to demonstrate the problems with diagnosing schizophrenia and making predictions as to the behavior of those diagnosed as schizophrenics. It is plain from the testimony here that the mother is currently unable to provide proper and adequate care for the child. There is sufficient on which to premise a finding of permanent neglect. It is notable that in this case, as in so many others, the proceeding was premised both on the ground of neglect and on the ground of mental illness, but that the petitioner chose to go forward on the ground of mental illness. Were I not constrained by *Matter of Sylvia M. (supra),* I would conclude that here, as in that case, the mental illness statute was applied unconstitutionally because the court equated inability "to provide proper and adequate care" with the mere existence of the mental illness found to be present at the time of the hearing, thus visiting the consequences of loss of parental rights upon a parent suffering from a mental illness merely by reason of status. The record evidences a clear case of neglect. The 11-year-old child has been in foster care, by order of the Family Court, since March, 1977. It is plain that this mother made no plans and refused to participate in the making of plans for the child's future. As stated in *Matter of Hime Y.* (52 NY2d 242, 251, *supra*): "[M]ental illness does not, *ipso facto,* establish physical disability exonerating a parent from the obligation to plan for her child." The record before us is sufficient for a finding that Dochingozi B. is "a permanently neglected child" (Social Services Law, § 384-b, subd 4, par [d]). In my view, the case should be remanded for a dispositional hearing in order to consider the best interests of the child. Such a dispositional hearing is not required where the termination of parental rights is premised upon mental illness *(Matter of Sylvia M., supra).* If, as this court

has held, "the court must always ultimately determine the child's best interests in its disposition" *(Matter of Sylvia M.,* 82 AD2d 217, 234, *supra),* a dispositional hearing is warranted. The evidence establishes that the almost 11-year-old child lived with her mother for the first six years of her life and there has been regular visitation between the two during the subsequent years of foster care. Permanent placement and adoption will preclude visitation unless consent of the guardian or the adopting parents is obtained. Under the neglect statute, such a hearing is requisite. There has been no hearing on the limited issue of what disposition would be in the child's best interest. On this sparse record, there is no basis for making an informed determination of the effect that either discontinuance of visitation or adoption will have on the welfare of the child. Accordingly, I would remand the proceeding for a dispositional hearing.