■ In the Matter of DAVID JOSEPH G., an Infant Alleged to be Neglected. ST. CHRISTOPHER-OTTILIE, Appellant; JANE G., Respondent.—Order and supplemental order of the Family Court, New York County (Sheldon Rand, F.C.J.), entered December 30, 1988 and February 2, 1989, respectively, which dismissed the petition to terminate the parental rights of respondent, the natural mother, on the grounds of mental illness and permanent neglect (Social Services Law § 384-b [4] [c], [d]), reversed, on the law and the facts and in the exercise of discretion, and the petition granted, without costs.

David Joseph G. was removed from his mother's care on November 12, 1985, some six weeks after his birth, based upon a diagnosis of failure to thrive syndrome which was made at the age of three weeks. The child was briefly returned to respondent, but was removed when he again exhibited a failure to thrive. The parental rights of the putative father have been terminated, and no appeal has been taken from that determination.

All of the expert witnesses who testified at the hearing agreed that respondent suffers from a mental illness, but they disagreed upon whether the appropriate diagnosis is schizophrenia, residual type or borderline personality disorder or panic disorder and dependent personality. However the condition is clinically described, respondent's history includes sometimes violent psychotic episodes, for which significant periods of hospitalization have been required, and the abuse of cocaine, alcohol and marihuana (although respondent denies any current drug use).

Respondent's lifestyle is variously described as "marginal" (evaluation by Mary Anne Arseniero, M.D., dated Jan. 3, 1986) and "chronically chaotic" (evaluation by Arthur F. Milone, M.D., dated Apr. 11, 1988). Both reports describe her as having poor insight into her emotional problems, unrealistic goals and poor judgment. Dr. Arseniero's report notes that respondent tends to minimize the severity of her condition, talking about it "in a detached indifferent manner." Respondent resides with her boyfriend, Don Burris. Respondent testified that she has seen Donny smoke crack on only two occasions. However, the records from Fordham-Tremont Community Mental Health Center contain the notes of a consultation with Mr. Burris which refer to "a long history of substance abuse—marijuana, alcohol and cocaine and/or crack." Furthermore, during the course of the hearing, respondent stated that she does not trust Donny and that she suspects him of stealing various items from their apartment to sell in order to obtain money to buy drugs. Donny is abusive towards respondent, who testified that he broke her nose on her birthday (March 22nd) in 1988. Also residing with respondent and her boyfriend is their child, Donny, Jr., who was born on October 6, 1988. The record before this court is insufficient to permit any conclusion to be drawn as to the adequacy of care given to this child by respondent.

As there is no doubt that respondent suffers from a mental illness (Social Services Law § 384-b [4] [c]), the question before the court is whether "the child would be in danger of becoming a neglected child" if returned to respondent's care (Social Services Law § 384-b [6] [a]). The psychiatrists who evaluated respondent expressed reservations about her ability to provide proper and adequate care for the child within the contemplation of the statute *(Matter of Susan F.,* 106 AD2d 282, 283). Even Paulos Kymissis, M.D., called as a witness for respondent, when pressed by the court, was reluctant to state that respondent would be able to adequately care for the child in the foreseeable future, stating only, "It's a possibility", and "this is something that has to be evaluated as time goes by."

As this court held in *Matter of Vera T.* (80 AD2d 511, *affd* 55 NY2d 1028), the mere possibility that a mother might be capable of providing adequate care in the indefinite future does not warrant the return of a child to her custody *(see also, Matter of Hime Y.,* 52 NY2d 242, 251 [Wachtler, J., dissenting]). This child has been in foster care virtually since birth, and the court has an obligation to further "the best interests, needs, and rights of the child by terminating parental rights

and freeing the child for adoption" (Social Services Law § 384-b [1], [4] [c]). Nor, as respondent intimates, is it a prerequisite to termination of her parental rights that she be provided with child care assistance (see, Matter of Kevin R., 112 AD2d 462, lv denied 67 NY2d 602).

The grounds for Family Court's determination are not stated in its order and supplementary order. We find the evidence adduced at the hearing to be insufficient to warrant a finding of permanent neglect (Social Services Law § 384-b [4] [c]). However, we regard Family Court's direction, in its supplemental order, that respondent be assigned a homemaker to provide child care assistance to be a finding that respondent lacked the present capacity to provide proper and adequate care for David Joseph G. Taken together with the dearth of opinion by any of the psychiatric experts that respondent would attain this ability in the foreseeable future, Family Court's determination is without foundation and must be reversed. Concur—Ross, J. P., Ellerin, Wallach and Rubin, JJ.

Rosenberger, J., concurs in a separate memorandum as follows: I agree with the majority that the clear and convincing evidence presented at the hearing established that the respondent mother is presently and for the foreseeable future unable, by reason of mental illness, to provide proper and adequate care for the child. (Social Services Law § 384-b [4] [c].) However, in my view, the majority places undue emphasis on respondent's lifestyle, which is relevant only insofar as it reflects upon respondent's mental state, given our finding that the evidence was insufficient to warrant a finding of permanent neglect.