Matter of Robert D Jr. (2005 NY Slip Op 51231(U))

[*1]

Matter of Robert D Jr.

2005 NY Slip Op 51231(U)

Decided on July 29, 2005

Family Court, Suffolk County

Spinner, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 29, 2005

Family Court, Suffolk County
In the Matter of Robert D Jr. (DOB 00/00/0000) Anthony D (DOB 00/00/0000), Children under the Age of Eighteen Years Alleged to be Children of Mentally Ill Parent, Children of Mentally Retarded Parent, Permanently Neglected by Anna Marie P (DOB 00/00/0000), Respondent.
In the Matter of the Suffolk County Department of Social Services o/b/o Robert D Jr. (DOB 00/00/0000) Anthony D (DOB 00/00/0000) Children under the Age of Eighteen Years Alleged to be Neglected by Anna Marie P (DOB 00/00/0000), Respondent.
B-00000-04

Suffolk County Attorney
Attorney for Petitioner
400 Carleton Avenue
Central Islip, New York 11722
By: Frank Krotschinsky
Legal Aid Society of Suffolk County
Family Court Bureau
400 Carleton Avenue
Central Islip, New York 11722
By: Kim Nohilly
Marjorie E. Zuckerman, Esq.
Law Guardian
134 Fourth Avenue
Bay Shore, New York 11706
Temple McDay, Esq.
Attorney of Non-Respondent Grandmother
1767 Veterans Memorial Highway
Islandia, New York 11722

Jeffrey Arlen Spinner, J.
On November 8, 2002, the Suffolk County Department of Social Services (DSS) filed Neglect Petitions against Respondent Anna Marie P (DOB: 00/00/0000) [Respondent], on behalf of her children Robert D Jr. (DOB: 00/00/0000) [Robert], under Docket Number NN-00000-02, and Anthony D (DOB: 00/00/0000) [Anthony], under Docket Number NN-00000-02, alleging that said children had been neglected by Respondent on the following grounds and based upon the following facts:
"Upon information and belief respondent Anna Marie P, placed at risk of becoming physically, mentally and emotionally impaired James P, Robert D, Jr. and Anthony D, the children alleged to be neglected herein, in that the respondent has failed to provide adequate guardianship and care of said children by failing to take appropriate action to protect said children from being subjected to excessive corporal punishment and domestic violence; to wit:
A.In or about October, 2002, the co-respondent became angry with the child Robert D because the child wouldn't go to bed. The co-respondent shoved the child into a dresser causing the child to sustain a bruise to his left thigh. The child stated that his father hits him 'real hard', has punched him in the back, and has dragged him off his bed by the wrists because he wouldn't stop crying. The respondent was aware of the co-respondent's treatment of the child and did not effectively intervene to protect the child.
[*2]
B.The co-respondent admitted to not wanting to take any responsibility for the child James P when he is at the house because the child is not the co-respondent's son. The co-respondent admitted to calling the child names and to kicking and causing injury to the child while the co-respondent was holding Anthony D in his arms. The respondent was aware that the co-respondent doesn't like her son James P and that the co-respondent had called the child names and failed to initiate any plan to protect the child.
C.The respondent admitted that the co-respondent curses at her. The child Robert D stated that he hears the respondent and co-respondent arguing, hears the co-respondent calls the respondent names and curse at her, and that the fighting between the respondent and co-respondent wakes up the baby.
D.On June 27, 1997, before the Honorable William J Kent, the respondent Anna Marie P was adjudicated to have neglected Robert D, one of the children alleged to be neglected herein, in that the respondent consented to the court making a finding of neglect pursuant to FCA 1051A.
The source and belief of this information are the verbal statements of Robert D, Sr., Anna Marie P, James P and Robert D, Jr. made to Suffolk County Child Protective Services Caseworker Fran G and Senior Caseworker Daune-Rae M, and the records of Suffolk County Child Protective Services."
On October 24, 2003, DSS filed Petitions (Extension of Placement and Permanency Hearing) against Respondent on behalf of said children, under Docket Numbers NN-00000-02/03C and NN-00000-02/03C. Thereafter, on November 6, 2003, an Interim Order was entered, on the Court's own motion, under said Docket Numbers as well as Docket Numbers "NN-00000-02 thru NN-00000-02", ordering forensic parenting evaluations of the respondents, and a full neurological evaluation of the child Anthony D, to include "...a comprehensive assessment of the child's level of function in the areas of speech, feeding, walking, cognitive skills, fine motor skills, as well as any other area(s) in which the child is deemed either delayed or in need of services...".
On December 23, 2003, an Interim Order of Fact-Finding and Disposition (and Permanency Hearing) (Neglect), issued by Family Court Judge Barbara Lynaugh, was entered extending the placement of the subject children with their maternal grandmother, Loretta P, requiring supervised visitation, and further stating the following:
"...After trial the Court found that the respondents had neglected the three subject children by the respondents' pattern of behavior that posed a risk of harm to the children..."
"...The Court has reserved decision as to whether Robert, Jr. and Anthony should be returned to the respondents until it receives the results of a Forensic parenting evaluation that is underway pursuant to an order entered 11/06/03. The child James P is already in the permanent custody of his grandmother Loretta P under docket V-0000-95..."
On May 24, 2004 a Memorandum Decision was signed and entered by Judge Barbara Lynaugh, which decision included the following:
"...Despite anger management counseling, father's anger is not under control and has resulted in acts of domestic violence toward mother and acts of corporal punishment toward the two older children. While father's frustration may be understandable, its manifestation is not only [*3]inappropriate but a danger to the children."
"Mother is somewhat cowered by father's behavior and is seemingly unable to effectively handle father's outbursts. Mother has, at times, left the home in fear. Mother has also minimized and misrepresented the extent of the bullying, intimidation, and physical altercations to which she has been subjected by father."
"Based on the foregoing, the court finds that it would be in the best interests of James and Robert to remain in the custody of their maternal grandmother. The court further finds that it would be in the best interests of Anthony, a developmentally delayed child with special needs, to remain in the custody of the Commissioner, in his present foster care placement, at this time. Neither parent is able to effectively care for these children at this time without further intensive therapeutic intervention. It is the court's hope that with a renewed dedication to address their various issues through an intensive program of counseling, respondents will be able to regain custody of their children in the near future..."
Thereafter, on June 28, 2004, Orders of Fact-Finding and Disposition (And Permanency Hearing (Neglect) were entered, reflecting the directives of the Court, as set forth in the above referenced Memorandum Decision, including continuation of placement of the children and a course of intensive therapeutic intervention for both the Respondent herein and her co-respondent.
On July 14, 2004, DSS filed the following Petitions against Respondent, under the docket numbers indicated, and setting forth certain allegations against Respondent on the grounds and based upon the allegations stated herein:
I.Petitions (Mental Illness), under Docket Numbers B-00000-04 and B-00000-04:

"5....respondent mother...is mentally ill as defined in Section 384-b of the Social Service Law in that:...On or about 9/15/95 Suffolk County Surrogate's Court appointed a Guardian Ad Litem for respondent...On 4/13/99 Dr. Robert D, MD, stated respondent's cognitive abilities have been affected after undergoing surgery for a right frontal craniotomy. Child & Family Psychological Services' 2/22/04 Forensic Parenting Evaluation stated respondent mother's personality configuration is consistent with avoidance personality disorder, with schizoid and dependent traits.
6.By reason of the mental illness of the respondent mother...the child would be in danger of becoming a neglected child...if the child were placed in or returned to the custody of respondent mother in that...his physical, mental and emotional condition would be in imminent danger of becoming impaired as a result of his parent's inability to exercise a minimum degree of care."
II.Petitions (Mental Retardation), under Docket Numbers B-00000-04 and B-00000-04:

"5....respondent mother...is mentally retarded as defined in Section 384-b of the Social Service Law in that:...respondent mother has been diagnosed as having subaverage intellectual functioning originating during the developmental period and associated with impairment in adaptive behavior to such an extent that if..." the child "...were placed in the custody of respondent mother he would be in danger of becoming a neglected child...His physical, mental or emotional condition would be in imminent danger of becoming impaired as a result of his parent's inability to exercise a minimum degree of [*4]care.
6....In a 1990 evaluation respondent obtained a Full-Scale IQ of 59. On or about 5/27/92 Suffolk County Surrogate's Court appointed respondent's mother Guardian of the person for respondent under File No. 000 G 1991. On or about 9/15/95 Suffolk County Surrogate's Court appointed a Guardian Ad Litem for respondent under File No. 000 G 1995. On 4/13/99 Dr. Robert D, MD, stated respondent's cognitive abilities have been affected after undergoing surgery for a right frontal craniotomy."
III.Petitions (Permanent Neglect), under Docket Numbers B-00000-04 and B-00000-04:
"7....Respondent parent has failed for a period of more than one year following the date the child came into..." Court ordered placement of differing types for the individual children "...substantially and continuously or repeatedly to maintain contact with or plan for the future of the child although physically and financially able to do so:

A.Respondent mother failed to successfully address her mental health issues, although encouraged to do so. She failed to complete domestic violence counseling, refused the services of an Intensive Case Manager and failed to accept responsibility for her child's court-ordered placement. In or about December, 2002, her therapy case at Madonna Heights Family Service Clinic was closed due to excessive absences. Children & Family Mental Health Services reported respondent stopped attending their psychotherapy program in or about February, 2003, but they recommend continued psychotherapy.
B.Respondent mother failed to follow the recommendations of the forensic parenting evaluation, although encouraged to do so. She failed to enroll in a parenting program and failed to advance her parenting skills, although encouraged to do so.
C.Respondent mother failed to maintain regular contact with the agency to plan for her child's return, although encouraged to do so. She failed to keep the agency apprised of her address change, and failed to respond to caseworker's attempts to set up planning appointments.
D.Respondent failed to attend Comprehensive Case Reviews held on 3/21/03 and 1/5/04, although encouraged to do so.
E.Respondent mother failed to advance the parent/child bond...although encouraged to do so, and visitation remains supervised, in the child's best interests."
On October 28, 2004, DSS filed Petitions (Extension of Placement and Permanency Hearing) against Respondent regarding the subject children. On March 10, 2005, Orders-Extension of Placement and Permanency Hearing were entered extending placement until December 23, 2005, and changing the goal to adoption.
It should be noted that on December 23, 2004, February 14,2005, and March 29, 2005, this Court issued Orders Directing Examination of Respondent, which was finally forwarded to Dr. Jane K, who promptly returned a Psychological Assessment Report, dated May 9, 2005.
 The child Robert D Jr (DOB: 00/00/0000) has been in court-ordered placement continuously since November 4, 2002, and was previously in court-ordered placement continuously from 1997 to 2001; while the child Anthony D (DOB: 00/00/0000) has been in the care of the Suffolk County Department of Social Services continuously since November 4, 2002, shortly after his birth.
EVIDENCE ADDUCED AT THE HEARING
Following a series of adjournments and conferences, the Court set the matter down for trial. On May 12, 2005, Co-Respondent father, Robert D, Sr., executed judicial surrenders as to both of the subject children, whereby the Permanency Petition was deemed established as to him, and his parental rights were thereby terminated. On May 18, 2005, the Court held a fact-finding hearing. Petitioner requested the Court take judicial notice of various documents in support of the Petition. Respondent, through her own testimony and that of one additional witnesses in opposition to the Petition, offered testimonial evidence. The Law Guardian, through one witnesses in support of the Petition, offered testimonial evidence. The Court was afforded ample opportunity to assess the demeanor, credibility and veracity of each witness who offered testimony in this proceeding.
Petitioner further requested that the Court take judicial notice of the contents of all the files, past and present, in the possession of the Family Court regarding Respondent herein, and most especially the neglect, mental illness, mental retardation and permanent neglect petitions presently before the Court. Petitioner further requested the Court take judicial notice of the rather extensive evaluations from Dr. Jane K and her office, Child and Family Psychological Services, P.C., starting with the report dated February 22, 2004, which is referenced in the more recent updating, which the Court ordered from Dr. K, said updating report being dated May 9, 2005.
Petitioner thereupon rested.
Respondent then moved to dismiss all petitions arguing Petitioner failed to state a prima facie case. The Non-Respondent Grandmother asked the Court to take judicial notice of a certified copy of a decision issued by the Suffolk County Surrogate's Court, dated May 27, 1992, adjudicating Respondent herein as a person in need of guardianship by virtue of that Court's finding that Respondent was a developmentally disabled person within the provisions of 17-A of the SCPA. Upon counsel for Respondent pointing out that said document was already in the Court's records, it was instead marked Grandmother's Exhibit No.1 in Evidence.
Petitioner then took the position that granting of the motion by Non-Respondent grandmother to put this document before the Court required the Court to consider Petitioner's case as true as presented, and if the Court did that, then the recommendation of Dr. Jane K is very clear, that because of Respondent's intellectual functioning in the below average range, Respondent is unable to provide care to the children.
The Law Guardian concurred that Petitioner had made a prima fascia case, and that the reports of Dr. K, combined with the Surrogate's issuance of a permanent guardianship, which had not been revoked, suggested that there is incapability of caring for small children.
The Court denied the motion to dismiss for failure to set forth a prima facie case.
Respondent Anna Marie P testified on her own behalf, stating that she resided in Lindenhurst, New York; that she resided with Robert D, father of the subject children and previously Co-Respondent in the instant matters; that she was taking care of herself, supporting herself on her SSI checks; that she receives SSI checks because she has a learning disability and a seizure disorder; that she uses her SSI checks to pay toward her rent and food; that Mr. D brought [*5]her to court, and that either he or a medical cab brings her to her medical appointments; that when she visits her sons, she either watches television with them in their room, watches them play video games, sits in the living room and watches the baby, or sometimes goes outside and watches Anthony run around or play on the swing set; that she doesn't play games with them; that she has been to parenting programs, the latest one on February 25, 2005, and she completed the program; that she helps care for her sons when she visits them at her mother's home, for example sometimes she changes the baby, Anthony, when her mother asks her to; that she wouldn't say she was a better caretaker than her mother, but she feels she is better at disciplining the children; and that she doesn't help them with their homework, but she would.
Upon cross examination by the Assistant County Attorney, Respondent testified that she lived with Mr. D; that she doesn't work and Mr. D does; that she understood Mr. D had surrendered his rights to the subject children; that she understood that in the past Mr. D had been accused of hurting one or more of the children, but she claimed it wasn't true; that when asked how one of her sons broke his collar bone, she stated her son James, then age 8, was very jealous of Anthony when he was first born, and when she wouldn't let James hold Anthony, James grabbed Anthony from her arms, bent his arms back and shook him, which caused Anthony's collar bone to break before she could take the baby away from him; that she hurt her leg because she was carrying things in her hands and kicked the door closed; that when asked if this occurred after she had a fight with her landlord, she said she didn't have a fight, she had a disagreement; that her mother does most of the disciplining of the children at this point, but when she cannot control the children, her mother asks her to take over, and she tells them their behavior is unacceptable and they should listen to their grandmother; that she sees the children once a week, on weekends; that Mr. D pays most of the household expenses; that she cashes her SSI checks; and that her SSI checks are $666 per month, and her rent is $1375 per month.
Upon cross examination by the Law Guardian, Respondent testified that although she had previously stated that she sometimes changes the baby, Anthony, when her mother asks her to, at times she changes him because she sees he is wet and needs changing, without her mother telling her to; that she never complained that her children listen to her mother, but not her; but that when pressed she admitted making such a complaint about her son, James (not a subject child herein).
Upon cross examination by Non-Respondent grandmother's attorney, Respondent testified that the subject children, Robert and Anthony, had been in her mother's custody for two years, but had been with her previously; that Robert had been with her for a year, but previously had been with her mother for five years; that she admitted that while Robert was under her care he sustained bruises, but said "children get hurt"; that while Robert was in her custody, she didn't know he needed eye surgery, but learned this after Robert was returned to her mother; and that she wasn't at the hospital when he had the surgery because her mother didn't tell her what time the surgery was.
Respondent called Rosalie M, a friend of Respondent, as her second witness. She testified that she first met Respondent about eight years ago in the medical center; that she had witnessed Respondent with her children in her care, more so Robert (three years ago) than Anthony, because Anthony was taken away shortly after his birth, but a few times with Anthony, when he was a baby and Respondent was in a wheel chair; that she hadn't seen Respondent giving the children lunch, although she saw her give Anthony a bottle; and that she had not seen [*6]Respondent change Anthony.
Upon cross examination by the Assistant County Attorney, Ms. M testified that the last time she saw Respondent interact with any of the children was about eight months ago, for a couple of hours.
Respondent thereupon rested.
The Law Guardian called Loretta P, Respondent's mother and Guardian (as per the Surrogate's Court Order), and grandmother of the subject children, as a witness. She testified that James (Respondent's oldest son, not a subject child herein) has always lived with her ever since he came home from the hospital, when he was two days old, and he is now ten and a half years old; that James has a learning disability and James has attention deficit disorders, and attends Madonna Heights; that Robert (Respondent's second oldest son, a subject child herein) was with her from the time he was seven months old until he was five years old, then came back to her care and custody after several months with Respondent, and Robert sees a therapist twice a week and has attention deficit disorder and a learning disability (a little more severe than James), and post traumatic stress disorder; that Anthony (Respondent's youngest son, a subject child herein) has intervention four times a week, is developmentally delayed, has a very severe skin disorder (pediopsoriasis) which requires special attention from her, a sensitivity type syndrome and some social issues which are coming along; that, contrary to Respondent's testimony, she has never had behavioral problems with the children, nor any reports from their schools suggesting any such problems; that, when Respondent visits the children, she doesn't take care of them, she sits and watch television with them sometimes, and she goes outside (where she spends most of her time on her cell phone and smoking cigarettes), or they all go outside, and she and Respondent watch the children play; that Respondent doesn't prepare meals when she visits the children; that she has attempted to have Respondent change Anthony, to create a sense of bonding, but she takes a very long time, and being a young child he is very impatient with the length of time it takes to remove his clothes or to do other things, so he starts kicking and she has to take over; that Respondent isn't able to control the baby physically; that children don't want to be held or retrained too long, and she tries to hold them down and restrain them; and that Respondent has had conduct disorder all throughout her life, and flares up immediately, gets very aggravated very quickly, if she doesn't get her way.
Upon cross examination by Non-Respondent grandmother's attorney, Ms. P testified that she has had occasion to take Robert to Madonna Heights because he was having trouble sleeping because of fear of returning back home to his father, Mr. D; that when Robert was sent back to her care, she took him to the eye doctor that she usually took him to (around May, 2003), who asked for Robert's eye glasses, and when she told him she didn't have any, he told her he had prescribed eye glasses for Robert in August, 2002; that the eye doctor also told her that Robert wasn't brought back for his follow up appointment in October, so he never learned what the second opinion was regarding eye surgery for Robert; that Robert was not in her custody at that time, he was in the custody of his parents; that the doctor informed her that Robert now needed eye patch therapy to strengthen the muscles, so he can proceed to surgery, because in the time that was wasted the condition had become very severe; that she got him glasses immediately and did the eye patch therapy, so Robert could finally have the surgery in March, when they had sufficiently strengthened the muscles; and that Robert's eyesight had deteriorated in the interim, [*7]because he didn't have the glasses that the doctor had prescribed.
All sides rested upon conclusion of this cross examination.
In his closing argument, Assistant County Attorney Frank Krotschinsky perspicaciously pointed out that the relevant statute regarding this matter was Social Services Law 384-b(4)(C), and that the testimony had cogently demonstrated that Respondent is, for the foreseeable future, by reason of mental illness or mental retardation (elements of both having been indicated in the reports of Dr. K and further adduced by the testimony given), unable to provide proper supervision and care for her children, who have been in the care of their grandmother, pursuant to N-Dockets, for a period in excess of one year (and in fact, within their grandmother's custody and care for a considerably longer period of time).
FINDINGS OF FACT AND CONCLUSIONS OF LAW
The Family Court Act defines a neglected child as one whose "physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired" as a result of the caretaker's failure "to exercise a minimum degree of care...in supplying the child with adequate food, clothing, shelter...or medical or dental care", or "in providing the child with proper supervision or guardianship" ( Family Court Act § 1012(f)(i)(A)&(B) ). Actual injury or impairment need not be found so long as a fair preponderance of the evidence establishes that the child is in imminent danger of either injury or impairment. See, Matter of Katie R., 251 AD2d 698, 673 NYS2d 792, lv. denied 92 NY2d 809, 678 NYS2d 594; Matter of Christine L.L., 233 AD2d 705, 650 NYS2d 815, lv. denied 89 NY2d 812, 657 NYS2d 405. Moreover, "neglect" as defined by the statute encompasses conduct which is not deliberate and includes failure to provide adequate care due to conditions for which the parent is entirely without fault, such as mental illness or retardation. King v. Perales, 152 AD2d 694, 544 NYS2d 869 (2nd Dept. 1989); Matter of Ayana E., 162 AD2d 330, 557 NYS2d 14, lv. denied 76 NY2d 708, 560 NYS2d 990.
The Court has given due and careful consideration to the evidence that has been presented in these proceedings and has weighed the relative credibility of the persons who testified during the fact finding hearing. Based upon the credible material and admissible evidence adduced, the Court finds that the Petitions against Respondent have been established by clear and convincing evidence, and that the subject children, Robert D, Jr. (DOB: 00/00/0000) and Anthony D (DOB: 00/00/0000), are permently neglected within the meaning of Social Services Law §384-b(4)(C), by reason of the mental illness of Respondent.
The testimony clearly establishes that Respondent, due primarily to her diminished mental capacity, has been unable to continually maintain and provide a clean, orderly and safe living environment, and has further failed to supply adequate food and appropriate medical and dental care to the children. Indeed she has been consistently unable to provide proper supervision and guardianship for the children. Although many of the actions of Respondent, when viewed individually, do not appear to be particularly grievous, it is the totality of Respondent's conduct coupled with her diminished mental capacity and her inability to follow, retain and implement basic care and safety instructions which compel this Court to the inescapable conclusion that the children would be at imminent risk if returned to Respondent's care and custody. Matter of Christine L.L., 233 AD2d 705, 650 NYS2d 815, lv. denied 89 NY2d 812, 657 NYS2d 40; Matter of Barbara S., 244 AD2d 556, 664 NYS2d 475; Matter of Cody P. [Nicole S.], 227 AD2d [*8]724, 642 NYS2d 337; In re Ayana E., 162 AD2d 330, 557 NYS2d 14. The failure to provide even a minimum degree of care has impaired, or has placed in imminent danger of becoming impaired, the physical, mental or emotional condition of the children.
As stated above, a finding of neglect need not be based upon any finding of intent or culpability on the part of the parent. In the instant matter, the Court most certainly sees no evidence of malice or deliberation in Anna Marie P's conduct. On the contrary, the facts reveal she genuinely loves and cares about her children. It is, however, the consideration of imminent risk of harm to the children which is paramount.
As the Appellate Division, 2nd Department, set forth in Matter of Michael W./Stella W., 790 NYS2d 232, in its decision dated February 28, 2005: "There was clear and convincing evidence to support the conclusion that the mother is, by reason of mental illness, presently and for the foreseeable future unable to provide proper and adequate care for her children (see Social Services Law §384-b[4][c]; Matter of Hime Y., 52 NY2d 242, 437 NYS2d 286, 418 NE2d 1305)". Further-more, the similarities between Matter of Michael W./Stella W., supra , and the case at bar are clear and substantial, as demonstrated by the following language: "The psychologist opined that due to the mother's illness, the symptoms that have manifested, her lack of insight about her illness, her need to remain in consistent treatment, and the likelihood that increased stress could further exacerbate her symptoms, the children, if returned to the mother, would be at risk of being neglected in the present and foreseeable future. This evidence supported the Family Court's determination (see Matter of Thomas, 183 AD2d 716, 583 NYS2d 294; Matter of Nina D., 6 AD3d 702, 775 NYS2d 377; Matter of Pariis L., 286 AD2d 501, 729 NYS2d 631; Matter of Winston Lloyd D., 7 AD3d, 707, 777 NYS2d 175; Matter of Juliana V., 249 AD2d 314, 671 NYS2d 105; Matter of Rashawn L.B., 8 AD3d 267, 778 NYS2d 57; see also Matter of Ernesto Thomas A., 5 AD3d 380, 772 NYS2d 708)."
The grave concerns of the Court are further and exponentially exacerbated by the testimony of Respondent that she continues to reside with her prior Co-Respondent, the father of the subject children herein, and the obvious conclusion one must draw from her testimony that she is financially dependent on him in order to provide sustenance for her own survival, let alone that which would be financially required to properly maintain the children.
Therefore, it is
ORDERED, that the Petitions of the Suffolk County Department of Social Services for an order determining that the subject children, Robert D, Jr. and Anthony D, are children whose parent, Anna Marie P, is presently and for the foreseeable future unable by reason of mental illness, as defined by §384-b of the Social Services Law, to provide proper and adequate care, is hereby granted in all respects, for the reasons herein-above set forth, having been proven by clear and convincing evidence; and it is further
ORDERED, that the parental rights of Respondent, Anna Marie P, are hereby terminated regarding the subject children, Robert D, Jr. and Anthony D; and it is further
ORDERED, that the guardianship and custody of said subject children are committed to the Suffolk County Department of Social Services for the purposes of adoption.
This shall constitute the decision, judgment and order of the Court.
Dated: July 29, 2005
Central Islip, New York

____________________________________
HON. JEFFREY ARLEN SPINNER
Judge, County Court
Acting Judge, Family Court
PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF THE MAILING OF THE ORDER TO APPELLANT BY THE CLERK OF THE COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OR THE LAW GUARDIAN UPON THE APPELLANT, WHICHEVER IS EARLIEST.